# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

SAMUEL ARMEANU and
MATTHEW HERRERA,

       Plaintiffs,

vs.                                       No. CIV  05-619 JB/DJS

BRIDGESTONE/FIRESTONE NORTH
AMERICAN TIRE, LLC a/k/a BRIDGESTONE
FIRESTONE, INC. f/k/a BRIDGESTONE
AMERICAN HOLDINGS, INC.,

       Defendants.

## <u>MEMORANDUM OPINION</u>

**THIS MATTER** comes before the Court on the Defendant Bridgestone Firestone North

American Tire, LLC's Motion to Exclude Expert Testimony of Orris Johnson and Brief in Support

Thereof, filed April 17, 2006 (Doc. 39)("Daubert Motion").  The Court held a hearing on the motion

on May 24, 2006.  The primary issue is whether the Court should exclude Plaintiffs Samuel

Armeanu's and Matthew Herrera's tire expert, Orris Johnson, from testifying at trial because his

expertise, methodology, and opinions do not satisfy the standards for expert testimony that the

Supreme Court of the United States articulated in <u>Daubert v. Merrill Dow Pharmaceuticals, Inc.</u>, 509

U.S. 579 (1993).  Because the Court concludes that Johnson is qualified to offer some opinions in

this trial, but that his opinion that the tire failure was the result of a manufacturing defect, and the

methodology which he used to reach that opinion, are not reliable or helpful to the jury, the Court

will, in part, grant Firestone's motion and exclude from the trial Johnson's opinion that the tire

failure was the result of a manufacturing defect.

## FACTUAL BACKGROUND

This tire case involves, as many similar products liability cases before it, an expert who seeks to testify about the reason for the tire problem. The problem with the tire is not in dispute. After a careful review of Johnson's testimony, however, it remains unclear what the cause of the tire's problem was.

### 1. **Background of this Case.**

This case is a products liability action arising out of a motor vehicle accident that occurred on April 7, 2002 in Milan, Cibola County, New Mexico. See Notice of Removal, Exhibit A, Complaint for Defective Product Resulting in Personal Injury, ¶¶ 4-6 at 1-2, filed June 3, 2005 (Doc. 1)("Complaint"). The Plaintiffs allege that Samuel Armeanu was driving a semi-tractor trailer eastbound on I-40 when the left front tire, a Bridgestone V-Steel Rib R227 285/75R 24.5, on his Volvo D3 experienced a tread/belt separation and detachment, causing Armeanu to lose control of the vehicle. See Daubert Motion at 2. The Plaintiffs allege that the tire suffered a 360 degree belt separation. See Plaintiffs' Response to Defendant Bridgestone/Firestone North American Tire, LLC's Motion for Summary Judgment at 3, filed May 8, 2006 (Doc. 43).

### 2. **The Plaintiffs' Tire Expert – Orris Johnson.**

Johnson is a senior citizen with a long professional career involving tires. Johnson is, however, candid about the limitations of his experience. In the end, these limitations also restrict the scope of his expertise.

#### a. **Experience.**

Johnson worked at General Tire from 1949 to 1954, and again from 1963 to 1985. See

Deposition of Orris H. Johnson at 33:5-7 (taken February 22, 2006)("Johnson Deposition").  After leaving General Tire in 1954, he worked at Sieberling Rubber Company and then at Lee Rubber Company.  See id. at 33:12-17.  Johnson has not, however, worked for any tire manufacturer in twenty-one years.  See id. at 43:11-13.  Johnson has not been inside any tire company's manufacturing plant since leaving General Tire in 1985.  See id. at 49:12-14.

During Johnson's first stint at General Tire, the company was manufacturing bias-ply – not steel belted radial – tires, and he was not involved in failure analysis of steel-belted radial tires . See id. at 35:10-15 & 35:23 - 36:2.  At no time during his employment at Sieberling or Lee did either of those companies produce steel-belted radial tires. See id. at 20:2 - 21:12. When he returned to work for General Tire, it was not his job to determine what caused the adhesion breakdown in failed tires involved in litigation matters, and Johnson admits that such analysis was outside the area of his expertise at that time.  See id. at 40:20-25.

Johnson agrees that chemists and tire compounders develop rubber compounds, and admits that he is not a chemist or a chemical engineer.  See id. at 14:15-21.  Johnson also admits that he is not a tire compounder, metallurgist or physicist.  See id. at 15:9 - 16:1 & 32:23 - 33:1.

Johnson does not hold any patents related to steel-belted radial tires.  See id. at 18:3-5. Johnson has never published any articles pertaining to tires.  See id. at 16:19-21.  Since he left General Tire in 1985, he has not spoken at any seminars related to tires.  See id. at 17:17-19.

Further, Johnson has not personally tested steel-belted radial tires to failure.  See id. at 26: 24 - 27:2.  He has not run a properly designed and manufactured steel-belted radial tire to failure through a tread/belt separation and detachment where he was able to examine the fracture surfaces. See id. at 136:24 - 137:16.  He has not done any adhesion testing of steel-belted radial tires.  See id.

-3-

at 18:6-9.

Johnson has not personally participated in overdeflection testing of steel-belted radial tires where the tires were run to failure.  See id. at 23:10-13.  He has not done puncture testing of tires where he subjected the tires to punctures with nails or screws or other metal objects, and then ran the tires to see how they failed.  See id. at 24:10-14.  He has not done puncture testing of radial truck tires.  See id. at 94:23 - 95:2.

Johnson has not participated in impact testing where the tire was purposely subjected to an impact and then the tire was run to failure to see how the tire failed.  See id. at 25:1-5.  Since leaving General Tire in 1985, he has not personally participated in any underinflation, overdeflection, or puncture testing of steel-belted radial tires.  See id. at 45:9-12.  Since leaving General Tires, he has not personally been involved in any dynamic testing of tires.  See id. at 45:13-15

### b. **Johnson's Litigation Consulting.**

Since retiring from General Tire in 1985, Johnson has spent all of his time as an expert in litigation matters.  See id. at 53:20-24.  Further, consulting in litigation matters generates all of his business income.  See id. at 59:18-20.  Since he began consulting in litigation matters in 1985, all of his tire examinations have been in conjunction with lawsuits or potential lawsuits.  See id. at 53: 25 - 54:4.

Johnson represents that approximately 75% of his litigation consulting work is for plaintiffs. See id. 54:8-10.  All of his involvement in cases where a plaintiff is suing a tire company has been as an expert for the plaintiff.  See id. at 54:23 - 55:2.  He admits he has testified against tire manufacturers many times, and has consulted for plaintiffs in litigation matters against tire manufacturers many times.  See id. at 62:5-11.  He has testified against most major tire

manufacturers, including Firestone, Goodyear, Uniroyal, Goodrich, Michelin, Cooper Tire, General Tire, Dunlop, Bridgestone, Yokohama, Kenda Tire & Rubber Company, Kelly Springfield, Armstrong, Pirelli, and others.  See id. at 60:2 - 61:22.

Johnson represents that there have been numerous cases in which the plaintiff believed a tire was defective, but he felt it was not, and he declined to testify.  See id. at 62:11-15.  He states that he does not believe, however, that he has ever consulted in a litigation matter in which he concluded that a tire that sustained a tread/belt separation and detachment was not defective. See id. at 62:19-22.  More specifically, he has not testified, in a case where a tire manufacturer was being sued, that the tire was not defective.  See id. at 57:11-14.

No tire manufacturer has ever hired Johnson as an expert.  See id. at 53:13-15.  Johnson did not testify on behalf of General Tire, Sieberling, or Lee while he was an employee of those companies.  See id. at 37:17 - 38:3.  Johnson has not sought work from any tire manufacturer since leaving General Tire in 1985.  See id. at 65:20-22.

## PROCEDURAL BACKGROUND

Firestone contends that the Plaintiffs have improperly sued Bridgestone Firestone North American Tire, LLC as "Bridgestone/Firestone North American Tire, LLC a/k/a Bridgestone Firestone, Inc. f/k/a Bridgestone Americas Holding, Inc."  Answer to Complaint ¶ 2 at 1, filed June 16, 2005 (Doc. 6).  The Plaintiffs have never responded to this charge, so the Court assumes that Firestone is accurate in its knowledge of its corporate structure.

The Plaintiffs have designated  Johnson as an expert witness to be called at the trial for the purpose of offering his opinion regarding alleged defects in the subject tire.

1. **Johnson's Analysis.**

Johnson stated at his deposition that he did not base his opinions in this case upon any scientific studies he personally has performed or upon any scientific studies that others performed. See Johnson Deposition at 213:23 - 214:4. Johnson admits his opinions in this case are not based on any testing he has personally done. See id. at 213:17-19. He also testified at his deposition that his methodology consisted of only observation and experience. See id. at 218:12-19.

When Johnson inspected the tire, he did not inspect it in a laboratory; rather, he inspected it in the office of the Plaintiffs' counsel. See id. at 115:13-18. He did not use any tire tools or equipment while inspecting the tire other than his hands, an inspection sheet form, a camera, and a hardness gauge. See id. at 118:13-19.

Further, at the time of his deposition, Johnson lacked some information about the tire. He did not have any knowledge or information about the vehicle's maintenance history or the tire's service history. See id. at 121:13-19. Johnson has no knowledge or information regarding the condition of the vehicle's companion tires at the time of the accident. See id. at 121:20-23. He does not know how frequently the subject tire's inflation pressure was checked before the accident nor when the inflation pressure in the tire was last checked before the accident. See id. at 122:3-9.

Johnson has no knowledge or information regarding what air pressure the vehicle's owner and operator attempted to maintain in the tire and companion tires. See id. at 123:19-23. He does not know when the tire was put on the truck nor how many miles the tire was driven. See id. at 124:3-8.

In addition, Johnson did not review the tire's design specification. See id. at 109:15-17. He has not reviewed any adjustment data or claims data applicable to the tire. See id. at 109:18-20 &

110:6-8.  Nor has he reviewed any Firestone documents in this case.  See id. at 109:21-23.

Johnson has never inspected a Bridgestone V-Steel Rib R227 tire before this case, and is not aware of any other Bridgestone V-Steel Rib R227 tire this size sustaining a tread/belt separation and detachment resulting in an accident.  See id. at 109:24 - 110:5.  He has not done any kind of tire testing with a Bridgestone V-Steel Rib R227 tire.  See id. at 110:9-11.

Moreover, Johnson did not inspect the wheel.  See id. at 131:20-21.  He has not seen photographs or videotapes of the wheel.  See id. at 209:19-21.  He does not know the wheel's condition.  See id. at 209:16-18.  Johnson is not aware of anyone having inspected the wheel, and is not aware of anyone checking the valve stem on the wheel to see if it was damaged or leaking – conditions he admits can cause a tread/belt separation and detachment.  See id. at 102:22-25 & 132:4-10.  He did not inspect any of the vehicle's companion tires and wheels.  See id. at 104:21-23.

Johnson agrees that, to properly and accurately determine the cause of tire failure, a careful, thorough examination of the tire is necessary.  See id. at 120:19-22.  He agrees that, if a tire examiner misses important evidence, he can arrive at wrong conclusions.  See id. at 121:9-12.  Johnson has not determined, based upon his work in this case, what caused the adhesion breakdown of the subject tire.  See id. at 161:13-16.

Johnson testified at his deposition that he wanted to examine the tire a second time to make sure the inner liner "does not show excessive heat."  Id. 141:1-3.  Johnson testified at his deposition that, when a tire is operated overdeflected/underinflated, overloaded, or both, excessive heat builds up in the tire, which may result in discoloration of the inner liner.  See id. at 82:21 - 83:1, 85:19 - 86:14, 88:16 - 89:24, 93:1-3.  Johnson concedes, however, that depending upon the use history of a particular tire, an expert may see different physical factors indicating the overdeflected operation

-7-

of the tire.  See id. at 92:21-25.  For example, depending on the use of the particular tire, heat discoloration may not be evident in the tire's inner liner.  See id. at 93:7-10.  At his deposition, Johnson testified that he did not see excessive evidence of uneven tread wear on the tire.  See id. at 194:9-11.

**2.      The Scientific Method.**

Johnson admits that he did not use the scientific method – forming a hypothesis and then testing the hypothesis to determine if it is true.  See id. at 218:5-11.  Johnson stated in his deposition that his methodology consisted only of experience and observation.  See id. at 218:12-19.  He acknowledges that he conducted his work in this case by himself and that he cannot identify other experts who agree with his opinions or methodology.  See id. at 218:20-25.

Johnson contends that he has examined hundreds of tires, but he has not quantified, in terms of a numerical value, the rate of potential error for the methodology he used in this case.  See id. at 220:1-8.  He has not relied on any peer-reviewed industry literature for his opinions in this case. See id. at 215:10-13.  He cannot identify any published testing, scientific studies, or peer-reviewed literature that supports the methodology he used as an appropriate methodology in tire failure analysis.  See id. at 220:9-20.

**3. Testing Relevant to this Case.**

Johnson has not done any tire testing relevant to this case. See id. at 109:12-14.  He admits there are chemical tests that can be done to detect the presence of contamination or foreign matter in a tire, but he did not conduct such tests on the tire.  See id. at 154:15-21.  Nor has he done any scanning electron microscope or EDX analysis of any Bridgestone V-Steel Rib R227 tire, including the subject tire.  See id. at 111:4-6.  Johnson has not personally ever done any tire testing with a

Bridgestone V-Steel Rib R227.  See id. at 110:9-11.

**4.  Johnson's Opinion.**

Johnson testified in his deposition that many factors can cause belt separations.  Johnson's ultimate opinion, however, is that "[t]he tire developed separation off the carcass between the tread and the steel belt assembly."  Report of Orris H. Johnson at 1 (dated December 9, 2005)("Johnson Report").  Johnson contends that this separation likely resulted from a "lack of adhesion in the compound or foreign matter that destroyed the adhesion in the carcass."  Id.

**a.  Reasons for Tire Failure.**

Johnson testified that there are many different things that can cause the adhesion in a steel-belted radial tire to break down.  See id. at 40:12-15.  He agrees that there are many service conditions that can cause the adhesion in a steel-belted radial tire to break down.  See id. at 40:16-19.

Johnson agrees properly designed and manufactured tires can fail for reasons unrelated to a defect.  See id. at 77:4-7.  A failed tire does not necessarily mean a bad or defective tire.  See id. at 79:2-10.  In fact, the vast majority of tire failures are not caused by defects in the tires.  See id. at 77:8-12.  Johnson further acknowledges that tread/belt separation is a common failure mode of steel-belted radial tires that all tire manufacturers make.  See id. at 81:20-25.

Johnson noted at his deposition that a separation in a tire is a condition that results from some underlying cause.  See id. at 81:9-11.  A tread/belt separation and detachment in a tire can occur because of misuse or abuse of the tire.  See id. at 82.  A tire can fail, either through a tread/belt separation and detachment or blowout, as a result of (i) underinflation; (ii) overloading; (iii) punctures; (iv) improper tire repairs; (v) mounting damage; (vi) high-speed operation; (vii) impact damage/road hazard injuries; (viii) a damaged or leaky valve stem, and/or (ix) excessive heat or

exposure to a heat source.  See id. at 82:25 - 83:3-6, 95:3-5, 100:24 - 101:13, 101:23 - 102:15, 103:19-22.  Johnson testified in his deposition that he had not, and could not, rule out such service conditions as causes of the tire's failure. See id. at 184:8-11.  Johnson also acknowledged that properly designed and manufactured tires can sustain belt edge separations for reasons unrelated to a defect.  See id.  at 92:17-20.

>    **b.**    **Design Defect.**

Johnson admits the that tire is not defective in design.  See id. at 145:17-19.  Johnson agrees that, if he had observed evidence of a design defect, he would have made note of such defect in his inspection notes.  See id. at 145:9-11.  He is not critical of the tire's design, and has not offered any opinion or prepared any drawings or specifications regarding an alternative design for the subject tire.  See id. at 145:23 - 146:4.

>    **c.**    **Manufacturing Defect.**

At his deposition, Johnson did not allege that he can identify a specific manufacturing defect in the tire nor does he contend that the subject tire did not conform to the design specification for the tire.  There is no reference to a manufacturing defect in his inspection notes or expert report.  The only thing Johnson references in his report as a possible cause for the lack of adhesion in the subject tire is foreign matter.  See id. at 161:24 - 162:4.  He has seen no evidence or imprint, however, of foreign matter or contaminant in the tire.  See id. at 162:21-23.

Johnson admits he cannot identify any specific contaminant or foreign matter in the tire that he believes affected the adhesion in the tire.  See id. at 153:22-25.  He is not aware of anyone else who has identified any contaminant or foreign matter in the tire.  See id. at 154:1-4.

Johnson recognizes that there are chemical tests that can be done to detect the presence of

contamination or foreign matter in a tire, but he has not conducted any such tests on the tire. See id. at 154:15-21.  He admits that he does not know and cannot state, to a reasonable degree of engineering probability, whether foreign material or contamination caused or contributed to cause the failure of the tire. See id. at 156:21 - 157:6.  Johnson has inspected failed tires in the past that contained visible contaminants and imprints from contaminants. See id. at 162:9-14.  Johnson did not find contaminants or imprints here. See id. at 162:18-20.

Johnson cannot state that there was a specific manufacturing defect in the subject tire when it left Firestone's hands.  See id. at 164:19-22.  He did not observe any physical evidence of a manufacturing defect in the tire.  See id. at 152:8-10.  Johnson did not note any specific manufacturing defects in the tire on his inspection notes.  See id. at 147:19-22.  Nor did he note in his expert report any specific manufacturing defects.  See id. at 147, 151:23-152:10.  He admits that, while inspecting a tire, it is his habit and practice to make note in his inspection notes and expert report of any manufacturing defect he observes.  See id. at 148:13-22.

Johnson does not contend the subject tire did not conform to the design specification for the tire. See id. at 152:11-14.  No component of the tire was out of specification.  See id. at 152:15-17. He is not contending there was any specific employee or production error in the manufacturing process regarding the subject tire. See id. at 152:21-25.  Johnson does not point to any alleged defect in the tire that should have been picked up on final inspection at the plant where the subject tire was manufactured.  See id. at 153:11-15.

Additionally, Johnson did not see any physical evidence of undercure or overcure on the tire. See id. at 155:8-14.  He did not see any physical evidence or signs of moisture, moisture voids, or air voids that got into the tire during the manufacturing process. See id. at 155:15 - 156:2.  He did

not observe any physical evidence of an improper rubber mix in the subject tire.  See id.. at 157:7-9.

Finally, Johnson does not dispute that Bridgestone V-Steel Rib R227Z tires comply with the applicable Federal Motor Vehicle Safety Standards ("FMVSS").  See id. at 195:24 - 196:2.  He acknowledges that compliance with FMVSS was one of the standards General Tire used to ensure its tires were properly designed and manufactured when he worked for General Tire.  See id. at 195:16-19.  Additionally, the tire is not the subject of any recall; nor is it the subject of any government or National Highway Traffic and Safety Administration investigation.  See id. at 172:20 - 173:4.

### d.    Lack of Adhesion.

Johnson's report opines the tire was defective because of a lack of adhesion.  See Johnson Report at 1.  Johnson saw tearing at multiple levels or planes in the tire.  See Johnson Deposition at 172:6-8.  He acknowledges that a properly designed and manufactured tire that sustains a tread/belt separation would likely have rubber tear lines.  See id. at 133:14-18.

Johnson testified at his deposition: "All I'm saying is something created a lack of adhesion, period.  And it can be a whole list of things."  Id. at 163:1-2.  He admits that, out of the "whole list of things," he did not determine what caused the lack of adhesion.  Id.  at 163:3-5.

### e.    Johnson Has Not Identified Any Marketing Defect.

Johnson states that he is not offering any warnings opinions in this case and did not offer any warnings opinions in his report.  See id. at 52:11-16.

### f.    Johnson's Deposition Testimony.

At his deposition, Johnson agreed that, if a question posed to him was unclear, he would stop and notify the examiner that he did not understand the question.  See id. at 6:5-11.  He made no such

request regarding the questions eliciting the responses upon which the Court relies.  Johnson testified that his deposition testimony covered all of the basis for his opinions.  See id. at 223:13-15.

Johnson reviewed and signed his deposition on April 17, 2006, making four pages of changes to his deposition testimony.  See Letter from Hutchings Court Reporters to Scott G. Edwards at 1 (dated April 21, 2006).  Johnson did not change the testimony that the Court cites herein.

### 5.    Daubert Motion.

Firestone filed this motion to exclude Johnson's expert testimony.  Firestone moves the Court to exclude Johnson's testimony because his opinion is conclusory, unsubstantiated, and lacks the requisite reliability to satisfy the requirements of rule 702 of the Federal Rules of Evidence, as the Supreme Court of the United States has interpreted that rule in Daubert v. Merrill Dow Pharmaceuticals, Inc. and in Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999).  Firestone further argues that Johnson is not, as rule 702 requires, qualified as a tire expert.

### 6.    Johnson's Affidavit.

The Plaintiffs have attached an affidavit of Johnson to their Plaintiffs' Response to Defendants' Motion to Exclude Expert Testimony of Orris Johnson, filed May 8, 2006 (Doc. 43)("Response").  Johnson's affidavit deals with the arguments that Firestone's counsel made in the Daubert Motion on a point-by-point basis.  The affidavit appears to contradict, or is at least at tension with, Johnson's deposition in several respects.

Johnson states in his affidavit that he has been analyzing and evaluating tire failure since 1950, when he first worked for General Tire analyzing tire scraps to identify the causes of tire failure.  See Affidavit of Orris H. Johnson ¶ 3, at 1 (given May 8, 2006)("Johnson Affidavit").  Since that time, Johnson contends his professional experience in evaluating tire failures has been extensive,

-13-

and that, beginning in 1954, he chaired a committee consisting of members from five tire companies established for the purpose of designing radial truck tires like the one at issue in this case.  See id. ¶ 4, at 1.  Johnson's affidavit suggests that, while employed by tire companies, he was continuously involved in the design, construction, and testing of tires.  See id. ¶¶ 5-8, at 1-2.

In the course of his work for General Tire, Johnson calculates that he personally examined over 100 tires per month, amounting to thousands of tires during his career.  See id. ¶ 7, at 2.  These examinations included evaluation of recurring problems such as tread separation; Johnson was required to participate in the processes of identifying and correcting these problems.  See id.  Johnson represents that "[o]ne simply cannot coordinate and oversee tire development and manufacture without being an expert in tire failure analysis."  Id. ¶ 8, at 2.

Since retiring from the industry in 1985, Johnson states that he has focused his work exclusively on tire failure analysis. See id. ¶ 9, at 2.  He has investigated over 400 tire failures for both plaintiffs and defendants, has testified in federal and state courts around the country, and has not failed to qualify as an expert in tire failure analysis.  In addition to having an excellent success record in litigation, the California Highway Patrol's Multidisciplinary Accident Investigation Team has acknowledged him to be a tire failure analysis expert. See id.

Johnson implies that a tire suffering a tread/belt separation indicates the tire is defective: "The Defendant's motion claims I did not identify a specific manufacturing defect with the subject tire.  This is not correct.  My inspection revealed that the tire failed because of 360 degree belt edge separation.  This occurred because of inadequate adhesion."  Id. ¶ 11, at 2.  Johnson states that his report had identified  a component which was out of specification.  See id. ¶ 12, at 2 ("The motion also claims I cannot identify any component in the subject tire which was out of specification.  This

is not correct.  This tire had belt edge separation 360 degrees as set forth in my original inspection sheet and my initial report to counsel for Plaintiffs.").

Johnson states in his affidavit that his physical examination of the tire did not reveal any physical evidence of under inflation or improper maintenance, and that the inner liner showed no evidence that the tire had been run with inadequate pressure.  See id. ¶ 14, at 3.  Johnson represents that there was even tread wear and that the inner liner showed no evidence that the tire had been run with inadequate pressure.  See id.  Johnson points out that his physical examination correlated with the history that the driver, Armeanu, relayed– that the tire had been driven approximately 70,000 miles and was checked daily to ensure it had the proper air pressure.  See id.

Johnson attests in his affidavit that he has attempted to rule out some of the service conditions that are known causes of tread/belt separations.  Johnson testified in his affidavit that his methodology consists of an examination of the tire, which is then compared with the reported history of the tire and its failure.  See id. ¶ 16, at 3.  Johnson contends that his examination of the tire included a review of the tire's available history.  See Response at 6.

Johnson states that the physical evidence and available historical information require a finding that a defect caused the tire's failure  See id. ¶ 16, at 3.  He concludes that the only credible cause for this 360 degree belt edge separation is inadequate adhesion.  See id.  Johnson's affidavit takes the position that a more specific diagnosis of causation is unnecessary:

> The specific reason for the lack of adhesion which led to this 360 belt separation is not of any importance from a tire manufacturing standpoint.  A reasonable user of radial truck tires is entitled to expect that if the tires are properly maintained and operated they should never experience this kind of separation because of lack of adhesion, regardless of the specific manufacturing defect or error responsible.

Id. ¶ 17, at 3.

## RULE 702 AND THE DAUBERT FACTORS

### 1. Rule 702.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Thus, rule 702 requires the trial court "determine whether the expert is proposing to testify to (1) scientific, technical, or other specialized knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." United States v. Muldrow, 19 F.3d 1332, 1337 (10th Cir. 1994).  Once the trial court has determined that expert testimony would be helpful to the trier of fact, a witness "may qualify as an expert by 'knowledge, skill, experience, training, or education' and . . . the 'expert' . . . should not be required to satisfy an overly narrow test of his own qualifications." Gardner v. Gen. Motors Corp., 507 F.2d 525, 528 (10th Cir. 1974).  Expert testimony is liberally admissible under the Federal Rules of Evidence, see United States v. Gomez, 67 F.3d 1515, 1526 (10th Cir. 1995)(describing rule 702 as a "liberal standard"), and the trial court has broad discretion in deciding whether to admit or exclude expert testimony.  Werth v. Makita Elec. Works, Ltd., 950 F.2d 643, 647 (10th Cir. 1991)(noting the trial court's decision will not be overturned "unless it is manifestly erroneous or an abuse of discretion").

### 2. The Daubert Standard.

In 1993, the Supreme Court ruled that, in addition to a witness being qualified as an expert, the witness' opinion testimony must be reliable from an evidentiary standpoint and fit the facts of the case.  See Daubert, 509 U.S. at 590-91.  Under the standard that the Supreme Court established

in <u>Daubert</u>, "[p]roposed testimony must be supported by appropriate validation– i.e., 'good grounds.'" <u>Id.</u> at 590.  Accordingly, the requirements of <u>Daubert</u> assign trial judges a gatekeeper function that "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." <u>Id.</u> at 592-93.

An expert must base his or her opinion on scientific knowledge and must derive that knowledge by the scientific method; if an expert's testimony does not pertain to scientific knowledge, it lacks evidentiary reliability. <u>See id.</u> at 589-90.  A showing that the knowledge offered is more than speculative belief or unsupported speculation demonstrates evidentiary reliability. <u>See id.</u> at 590.  While certainty is not required, the expert must base the knowledge asserted on good scientific grounds. <u>See id.</u> ("[I]t would be unreasonable to conclude that the subject of scientific testimony must be 'known' to a certainty.").

Scientific knowledge requires more than guesswork; it must be grounded in a body of known facts or a body of ideas inferred from such facts. <u>See</u> <u>Norris v. Baxter Healthcare Corp.</u>, 397 F.3d 878, 886 (10th Cir. 2005)(noting that although "'trained experts commonly extrapolate from existing data,' neither Daubert nor the Federal Rules of Evidence 'require[] a district court to admit opinion evidence which is connected to existing data only by the <u>ipse</u> <u>dixit</u> of the expert'")(quoting <u>Gen.</u> <u>Elec. Corp. v. Joiner</u>, 522 U.S. 136, 146 (1997)).  Generally, the focus is on the principles and methodologies, and not on the conclusions generated. <u>See</u> <u>Daubert</u>, 509 U.S. at 595.  Despite this focus on methodology, "an expert's conclusions are not immune from scrutiny . . . [and the] 'court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" <u>Dodge v. Cotter Corp.</u>, 328 F.3d 1212, 1222 (10th Cir. 2003)(quoting <u>Gen. Elec. Corp.</u>

v. Joiner, 522 U.S. at 146).

The Supreme Court has provided district courts with guidance related to what factors they should consider when evaluating the reliability of expert testimony.

> The Supreme Court in Daubert listed four nonexclusive factors that a trial court may consider in making its reliability assessment: (1) whether the theory at issue can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) whether there is a known or potential rate of error and whether there are standards controlling the methodology's operation; and (4) whether the theory has been accepted in the relevant scientific community.

United States v. Rodriguez-Felix, 450 F.3d 1117, 1123 (10th Cir. 2006).  Once reliability is established, however, it is still within the district court's discretion to determine whether expert testimony will be helpful to the trier of fact.  In making that determination, the court should consider, among other factors, the testimony's relevance, the jurors' common knowledge and experience, and whether the expert's testimony may usurp the jury's primary role as the evaluator of evidence.  See id.

### 3. **Kumho Tire Co., Ltd. v. Carmichael.**

After the Supreme Court's decision in Daubert, some Circuit Courts of Appeals, including the United States Court of Appeals for the Tenth Circuit, determined that the Daubert reliability and helpfulness analysis was unnecessary in cases where the proffered testimony was technical or specialized in nature, but otherwise non-scientific.  See Compton v. Subaru of Am., Inc., 82 F.3d 1513, 1518 (10th Cir. 1996)("[A]pplication of the Daubert factors is unwarranted in cases where expert testimony is based solely upon experience or training.").  In 1999, the Supreme Court abolished this distinction between scientific and technical evidence, and held that the opinions of an expert in a tire failure case merited rule 702 scrutiny.  See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 148-49 (1999).

In Kumho Tire Co., Ltd. v. Carmichael, the Supreme Court addressed the prerequisites for an acceptable methodology to be used by a tire expert in analyzing a failed tire, and upheld the district court's decision to exclude the opinions of a plaintiff's tire expert on Daubert grounds.  See id. at 153.  The plaintiffs' tire expert in Kumho Tire Co., Ltd. v. Carmichael had testified that a tire which had been subject to overdeflection sufficient to cause a tread/belt separation, should exhibit one or more of four physical symptoms: (i) greater tread wear on the tire's shoulder than along its center; (ii) indications of a "bead groove," or marks on the inside of the rim where the beads have been pushed too hard; (iii) signs of physical deterioration on the sidewalls of the tire; and (iv) marks on the tire's rim flange.  See id. at 144.  The expert had testified that, where he did not observe at least two of these four symptoms, he would conclude that a defect caused the separation.  See id. In affirming the propriety of the district court's application of the Daubert standard, the Supreme Court found no indication that other experts in the tire industry used the expert's process of elimination methodology – the "two-factor test" – and noted that, despite the prevalence of tire testing, there were no articles or papers validating that approach.  See id. at 157.

### 4.    Law Regarding Tire Failure.

Because of the wide variety of factors, other than defect, that can cause a tire to fail, courts have traditionally required plaintiffs in products liability cases involving tires to make a prima facie case of defect and unreasonable danger.  See Woelfel v. Murphy Ford Co., 487 A.2d 23, 24 (Pa. Super. Ct. 1985)(affirming summary judgment for defendant when the plaintiffs presented no evidence of a defect other than the mere happening of an accident); Sears, Roebuck & Co. v. Haven Hills Farm, Inc., 395 So.2d 991, 995 (Ala. 1981)(holding that evidence of an injury alone does not prove the presence of a defect).  The complexity and sophistication involved in the manufacture of

tires makes close scrutiny of the plaintiffs' evidence particularly necessary in cases involving punctures, underinflation, and other forms of alteration and damages to the tire.  See Korando v. Uniroyal Goodrich Tire Co., 637 N.E.2d 1020, 1025-26 (Ill. 1994)(noting that evidence that tire repairs may have damaged the tire's adhesion was relevant to evaluating products liability claim against tire manufacturer); Springer Corp. v. Dallas & Mavis Forwarding Co., Inc., 90 N.M. 58, 60, 559 P.2d 846, 848 (Ct. App. 1976)(requiring plaintiff to provide direct evidence supporting the conclusion that the probable cause of a blowout was a defective tire in a case involving rim damage and a puncture hole).  Since Daubert, courts have not hesitated to exclude expert testimony concerning alleged tire defects where the expert testimony is not reliable.  See Kumho Tire Co. v. Carmichael, 526 U.S. at 158;   Allen v. LTV Steel Co., 68 Fed. Appx. 718, 720-21 (7th Cir. 2003)(finding testimony unreliable when expert did not examine the tire at issue, but only reviewed reports of others, made comparisons to similar tire failures, and viewed videotape of the accident at issue).

## LAW REGARDING AFFIDAVITS THAT CONFLICT WITH DEPOSITION TESTIMONY

A court may disregard an affidavit that contradicts the affiant's sworn deposition testimony if the court finds that such an affidavit constitutes an attempt to create a sham factual issue.  See Burns v. Bd. of County Comm'rs, 330 F.3d 1275, 1282 (10th Cir. 2003); EEOC v. Yellow Freight Sys., Inc., 253 F.3d 943, 952 (7th Cir. 2001)("As a general rule, the law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony.")(internal quotation omitted); Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1223 n.2 (10th Cir. 2000).  When evaluating whether a contradicting affidavit attempts to create a sham factual issue, the Tenth Circuit directs trial courts to consider: (i)

whether the affiant's earlier sworn testimony was subject to cross-examination; (ii) whether the subsequent affidavit was based on newly discovered evidence not available to the affiant at the time of his earlier testimony; and (iii) whether the affidavit is an attempt to explain confusion inherent in the earlier testimony.  Rios v. Bigler, 67 F.3d 1543, 1551 (10th Cir. 1995).

Although this rule regarding conflicting testimony is most often implicated in a court's consideration of motions for summary judgment, at least one other federal court has applied the rule to exclude expert testimony in the context of a Daubert analysis.  See Boomsma v. Star Transport, Inc., 202 F. Supp. 2d 869, 876-77 (E.D. Wis. 2002)(striking subsequently given affidavits when "[i]t is obvious that the plaintiffs are attempting to 'repair' their experts' deposition testimony by coming forward with affidavits more in line with their . . . arguments").

## ANALYSIS

Johnson admits, at least in his deposition, that: (i) there is no physical evidence of a manufacturing defect in the tire, see Johnson Deposition at 152:8-10; (ii) he cannot rule out numerous service conditions and forms of abuse as causes of the tire's failure, see id. at 184:8-11; (iii) he did not apply the scientific method, see id. at 218:5-11; (iv) he conducted no testing to support his opinions, see id. at 109:12-14; (v) he cannot identify any published testing, scientific studies, or peer-reviewed literature that supports the methodology he used as an appropriate methodology in tire failure analysis, see id. at 220:9-20; and (vi) it is outside his area of expertise to determine the course of alleged adhesion breakdown in a failed tire.  See id. 40:20-25.  Consistent with the understanding of the Supreme Court of the United States as expressed in Daubert and Kumho Tire Co. v. Carmichael, Johnson's opinion invokes scientific and technical principles and must therefore satisfy the requisite standards for evidentiary reliability and helpfulness applicable

under rule 702.   Because the Court does not believe that Johnson's opinion testimony about a manufacturing defect satisfies the requirements that <u>Daubert</u> and its progeny impose, the Court will not allow Johnson to testify that the tire failed from a manufacturing defect.

## I.   THE PLAINTIFFS DID NOT TIMELY FILE THEIR RESPONSE, BUT THE COURT WILL CONSIDER IT.

Firestone served its Daubert Motion on April 17, 2006.  The Plaintiffs filed their response to the motion on May 8, 2006.  Pursuant to Local Civil Rule 7.6(a), "[a] response must be served within fourteen (14) calendar days after service of the motion."  In addition, Local Civil Rule 7.1(b) provides that "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion."  While acknowledging that the Plaintiffs' response to this motion is untimely, the Court will still consider their response.  A <u>Daubert</u> motion in a products liability case can be case determinative, and the Court believes it would be improper to decide such an important motion without fully considering the Plaintiffs' position.  In the absence of any showing of prejudice to Firestone as a result of the Plaintiffs' late filing, the Court will consider the Plaintiffs' response.

## II.   THE COURT WILL NOT DISREGARD JOHNSON'S AFFIDAVIT ENTIRELY.

Firestone's motion relies on answers to a carefully crafted deposition conducted by a skilled attorney who is extremely experienced in asking questions that do not permit the witness to give all of the information needed to establish his qualifications and the reliability of his methodology.  Johnson's affidavit provides the Court with a more complete story, and the Court has considered those portions of the affidavit that flesh out Johnson's qualifications and his methodology.

A significant portion of Johnson's affidavit, however, contradicts or is in tension with his deposition testimony.  Because Johnson was cross-examined at his deposition, because he had access

to pertinent evidence at the time of his deposition, and because his deposition testimony does not reflect any confusion, the Court has the authority to disregard those portions of his affidavit that contradict his testimony.  Nevertheless, when possible, the Court will attempt to harmonize the two sets of testimony to avoid exclusion of any relevant evidence.

III.    **JOHNSON IS QUALIFIED TO OFFER SOME OPINIONS IN THIS CASE.**

The Plaintiffs contend that Johnson is eminently qualified as a tire failure analysis expert. The Plaintiffs assert that Johnson is one of the most experienced and qualified tire failure analysis experts alive today.  While the Court does not deny that Johnson has extensive experience in the tire industry, his answers at his deposition limited his expertise with respect to tire failure analysis.

Despite the Plaintiffs' contention that Johnson is qualified to render expert opinions in this case, Johnson admits that he is not an expert in tire failure analysis.  Johnson, who has not worked for any tire manufacturer in twenty-one years, admits that, even while employed in the tire industry, it was not his job to determine the cause of adhesion breakdown in steel-belted radial tires.  See Johnson Deposition at 40:20-25. Johnson concedes that this analysis is beyond his area of expertise. See id. at 163:6-9.

The reason that these self-acknowledged limitations are important is because the background of the Plaintiffs' tire expert is relevant to an evaluation of the context in which he formed his scientific opinion. The Plaintiffs emphasize that Johnson spent many years working for tire manufacturers.  Since 1985, however, Johnson's experience in the tire industry has been limited to his litigation consulting practice.  Firestone does not dispute that Johnson worked for tire manufacturers; Firestone objects only to Johnson's qualifications as they relate to his ability to render an expert opinion in this case.

-23-

Johnson is not qualified to render the comprehensive opinion the Plaintiffs desire in this case. Johnson is not a qualified tire expert in tire failure analysis or in adhesion of steel-belted radial tires. Moreover, because his background and the limited methodology he used in this case do not satisfy the relevance and reliability requirements that the Supreme Court established in Daubert, the Court will exclude his opinion about the manufacturing defect in this case.

On the other hand, Firestone has not offered the Court any evidence, other than Johnson's own deposition testimony, that Johnson is not typical or is somehow lacking in the education, training, and experience that is normally and routinely accepted in the tire industry and the field of tire failure analysis. The Court considers it significant that Firestone, who has offered two tire experts in this case, has not obtained an affidavit from either one that supports the arguments that its attorneys have made as to Johnson's qualifications. The extent of Firestone's challenge to Johnson's qualifications is that he does not have certain specific experience described in the questions that Firestone's counsel asked at the deposition.

While the Court does not agree with the Plaintiffs that Firestone must present affidavits or testimony from experts to attack, under Daubert, Johnson's expertise,[1] the Court does not believe that Firestone has demonstrated Johnson is totally without expertise about any of the issues in this case. While Johnson does not have the expertise to determine the precise cause of tire failure, or at

_____

[1]The Plaintiffs contend that Firestone fails to offer the Court a reference to any affidavit or sworn testimony from any person or organization who allegedly evaluated Johnson's education, training, and experience, and found it to be insufficient according to any established industry standard or requirements. The Plaintiffs argue that, for this reason alone, Firestone's attacks on Johnson's qualifications must fail. The Plaintiffs' argument is misplaced. As the proponent of the expert, the burden is on the Plaintiffs to establish his qualifications. See Dodge v. Cotter Corp., 328 F.3d at 1222 (holding party proffering expert testimony must show the expert's methodology is scientifically sound and the expert's opinions are based on facts that meet rule 702's reliability requirements).

least did not fully bring to bear his expertise to the facts in this case, and thus cannot offer an opinion as to the specific manufacturing defect, if any, in this case, the Court will allow him to testify, in general, about the causes of tire failures.  Johnson may also be able to explain tire manufacturing, the history of tire manufacturing, tire design, and certain procedures and tests that are conducted on new tires.

## IV.   JOHNSON'S MANUFACTURING DEFECT THEORIES DO NOT COMPLY WITH THE INDICIA OF RELIABILITY THAT THE SUPREME COURT DESCRIBED IN DAUBERT.

Even if Johnson could qualify as an expert in tire failure analysis, the Court does not believe that his limited opinion would be of great help to the jury.  Johnson failed to conduct tests that might have more definitively eliminated a number of the many possible causes of the subject tire's failure. The Court finds that this limitation in his methodology undermines any assistance his testimony regarding an alleged manufacturing defect may have to the trier of fact.

Johnson's testimony that the tire at issue suffered from a lack of adhesion because of a manufacturing defect does not satisfy the elements of evidentiary reliability the Supreme Court established in Daubert.  First, Johnson has not tested his theories.  Second, he has not published his theories nor subjected them, or his methodology, to peer review.  Third, he has not cited to any scientific studies endorsing his theories or his methodology.  Fourth, Johnson admits he did not apply the scientific method to the opinion he has expressed about the subject tire.  Fifth, Johnson cannot establish the rate of error for his opinion or methodology, if any.  Finally, neither Johnson nor the Plaintiffs have provided any evidence that the relevant scientific community accepts Johnson's opinion and methodology.  See Daubert, 509 U.S. at 593-94.  Consequently, Johnson's opinions and methodology do not meet the Daubert standard.

-25-

### A.   JOHNSON DID NOT ADEQUATELY ANALYZE THE TIRE TO OFFER AN OPINION OF A MANUFACTURING DEFECT.

Johnson's tire opinion addresses a cause and effect relationship between certain physical, chemical, or mechanical conditions and the ultimate bonding or adhesion of the tire.   Such relationships must depend upon scientific principles that can be tested and which, if true, can be peer reviewed and gain acceptance in a relevant scientific community.   Absent such testing and acceptance, the opinion may be viewed as scientifically unsound and unreliable.

The Plaintiffs contend that the analysis Johnson used in this case to determine the cause of the tractor trailer's tire blowout is the same methodology he and other experts in his field use to form reliable opinions related to the cause of tire failure.   The Plaintiffs contend that Johnson used the same methodology as Firestone's tire experts and, further, state that such methodology is used industry-wide.

In his affidavit, Johnson contends he used a scientifically valid and repeatable method of analysis consisting of several fundamental steps.   First, the tire is physically examined, and the results of the examination are weighed against the expert's knowledge and experience as to what physical signs and evidence will be present in cases of improper use or under inflation.   See Johnson Affidavit ¶ 16, at 3.   This evidence is then compared with what is known about the history of the tire from persons with knowledge of the tire's history.   See id.   Finally, the reported history is evaluated against the physical evidence and the expert's fundamental knowledge to see whether there are consistencies or inconsistencies.   See id.

Regardless of the overall methodology and analysis that Johnson used,  however, he did not properly and thoroughly analyze the tire.   Johnson admits his opinions in this case are not based on any testing he has personally done.   See Johnson Deposition at 109:9-11.   Contrary to the Plaintiffs'

-26-

response and Johnson's affidavit, at the time Johnson formed his opinions in this case, he had no knowledge of the tire's history. The comparison that Johnson makes now is not the one he made before he reached his opinions, and knowledge of the tire's history is not reflected in his expert report.

Johnson's opinions are based on a cursory examination conducted in an office, as opposed to a laboratory, with inadequate tools. His opinions are not the product of scientific analysis, have not been subjected to independent testing, and are not based on any independent body of accepted scientific information. Johnson has not conducted testing in support of his analysis, he is missing important evidence regarding the tire, and he did not carefully examine the tire or review other relevant evidence.

The Plaintiffs seem to suggest that, as long as Johnson has inspected the tire, any opinion he offers is reliable and admissible. This argument is unpersuasive in light of <u>Daubert</u> and its progeny. The facts show that Johnson's opinion is not, as required, the result of sound scientific inquiry, but instead crosses the line into advocacy. Johnson's opinion, at the time of his deposition, contains no sound analysis of what actually occurred in the accident. He simply concludes that, because the tire suffered an adhesion breakdown, it must have been defective. The Court is concerned that Johnson's opinion was developed in the context of litigation rather than faithful scientific analysis.

The Plaintiffs contend that Firestone's motion attacks the reliability of Johnson's opinions in the case based on the arguments of its attorneys rather than on any affidavit or other testimony from their experts that say that the methodology Johnson uses is not sound and not generally accepted in the industry. The Plaintiffs' argument, however, attempts to shift the burden to Firestone. The Plaintiffs, as proponents of the challenged evidence, bear the burden of showing that

-27-

the expert evidence is reliable; Firestone remains free to choose how it will attack Johnson's opinion. In this case, the Plaintiffs have not shown that Johnson's conclusion that the tire at issue was defective is reliable, because Johnson does not have the expertise to reach that ultimate opinion under <u>Daubert</u> and did not conduct the analysis required to testify to that conclusion.

### B.    JOHNSON'S METHODOLOGY IS NOT RELIABLE.

The Plaintiffs contend that Johnson used standard and accepted methodology– the same methodology he has employed in over fifty years of conducting tire failure analysis.  The Court, however, must look at relevant principles and methods, and evaluate how the expert has applied his methodolgy to this case.  Johnson's methodology is insufficient under <u>Daubert</u>.

The only potential cause Johnson references in his report, and in his deposition, for the alleged lack of adhesion in the tire is the presence of foreign matter.  <u>See</u> Johnson Deposition at 161:17 - 162:4.  At his deposition, Johnson agreed there are chemical tests that can be done to detect the presence of contamination or foreign matter in a tire, but he has not conducted any such tests on the subject tire.  <u>See</u> <u>id.</u> at 154:15-18.  Moreover, the Plaintiffs' Response does not address Johnson's admission that there is no evidence of foreign matter in the tire, and that he cannot opine with certainty that foreign matter played any role in the breakdown of the tire.

Johnson's testimony also contradicts case law.  The Plaintiffs' assertion that the tire must be defective because it experienced a lack of adhesion and tread/belt separation is insufficient to satisfy the causation element necessary to succeed in a products liability lawsuit.

In their response, the Plaintiffs suggest for the first time that, while many factors can cause tread/belt separations, "there is no physical evidence and no historical information which would support a finding that any of these causes, such as improper maintenance or inadequate air pressure,

happened to this tire."  Response at 6.  The Plaintiffs further state: "Accordingly, Mr. Johnson . . . concludes that the only credible cause for this 360 belt edge separation is inadequate adhesion."  Id. See Johnson Affidavit ¶ 16, at 3.

There are several problems with the contentions the Plaintiffs now seek to advance.  First, this process of elimination methodology is similar to the methodology that the plaintiffs' expert used, and the Supreme Court rejected, in Kumho Tire Co., Ltd. v. Carmichael.  Johnson admits that he cannot rule out multiple service conditions as the reason for the tire failure; the expert in Kumho Tire Co., Ltd. v. Carmichael at least attempted to rule out some forms of tire abuse as a cause of failure. Still, the Supreme Court expressed concern over the expert concluding a tire was defective using the process-of-elimination methodology or his "two-factor test."  Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. at 154.

Second, differential etiology is only effective if the expert can eliminate a statistically significant number of potential causes.  Johnson unequivocally testified that he did not rule out the various service conditions and forms of abuse as causes of the tire's failure.  See Johnson Deposition at 184:8-11.  Significantly, Johnson cannot rule out an unrepaired puncture as the cause of the failure of the tire.  See id. at 223:8-10.

Finally, Johnson did not unreservedly conclude a defect was the cause of the tire's failure. Applying Johnson's process-of-elimination methodology, the jury could equally conclude that, because there is no physical evidence of a defect in the tire, the cause of the adhesion breakdown was something other than a defect in the tire.

Johnson's theories and methodologies remain unsupported, and do not pass the standards of Daubert and Kumho Tire Co., Ltd. v. Carmichael.  Accordingly, the Court believes there is too great

an analytical gap between the data and the opinion proffered.  See Gen. Elec. Corp. v. Joiner, 522 U.S. at 146.

Johnson has not satisfied the reliability requirements that the Supreme Court established in Daubert.  The Court will exclude Johnson's opinion that a manufacturing defect caused the tire failure.

## V.     JOHNSON'S OPINION IS NOT HELPFUL TO THE JURY.

The Plaintiffs contend that the flaws in Johnson's testimony relate to the weight of the testimony, as opposed to its admissibility, and are therefore more appropriately the subject of cross-examination, rather than exclusion.  The Supreme Court and the Tenth Circuit, however, require the Court to perform a gatekeeper function before it allows an expert to face cross-examination.  Here, Johnson's opinion does not meet the Daubert standards.

There is no dispute that lack of adhesion and tread/belt separation can result from many causes, including causes not related to a manufacturing defect.  Johnson concedes many different things could have caused the lack of adhesion in the tire at issue.  It is imperative the Plaintiffs present direct evidence that a defect caused the lack of adhesion and tread/belt separation.  Proof that an accident occurred, by itself, is not prima facie evidence that the tire was defective.

Johnson does not assist the jury with an analysis that suggests a myriad of potential causes for the lack of adhesion and tread/belt separation, but does not eliminate any causes.  In the end, Johnson, who may have the expertise to render an opinion about some manufacturing defects, did not bring his expertise to bear and did not employ methodology that convinces the Court he has a sound basis for his conclusion that the tire failure must have been the result of a manufacturing defect.

Without a showing that his testimony will help the jury, Johnson has not satisfied the relevance requirements that the Supreme Court established in <u>Daubert</u>.  As a result, the Court will exclude his ultimate opinion that a manufacturing defect caused the tire's failure.

**IT IS ORDERED** that the Defendant Bridgestone Firestone North American Tire, LLC's Motion to Exclude Expert Testimony of Orris Johnson and Brief in Support Thereof is granted in part and denied in part.  The Court will exclude or restrict the expert opinion testimony of Orris Johnson.  He may testify about the history of tire development and design, the many causes of tire failure, and some of the tests that can be used to determine tire failure.  The Court will not, however, allow him to testify that the tire failure at issue was the result of a manufacturing defect.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

James P. Lyle
Law Office of James P. Lyle, P.C.
Albuquerque, New Mexico

    *Attorney for the Plaintiffs*

Scott G. Edwards
Hartline, Dacus, Barger, Dreyer & Kern, L.L.P.
Dallas, Texas

– and –

Arthur O. Beach
Keleher & McLeod, P.A.
Albuquerque, New Mexico

    *Attorneys for Defendant*