IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SAMUEL ARMEANU and MATTHEW
HERRERA,

      Plaintiffs,

vs.                                                  No. CIV-05-619 JB/DJS

BRIDGESTONE/FIRESTONE NORTH
AMERICAN TIRE, L.L.C. a/k/a
BRIDGESTONE FIRESTONE, INC. f/k/a
BRIDGESTONE AMERICAS HOLDING,
INC.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Bridgestone/Firestone North American Tire, LLC's Motion and Memorandum for Summary Judgment, filed April 17, 2006 (Doc. 38)("Summary Judgment Motion"). The Court held a hearing on this motion on May 24, 2006. The primary issues are: (i) whether the Plaintiffs Samuel Armeanu and Matthew Herrera ("Plaintiffs") have presented evidence sufficient to establish a genuine issue of material fact regarding the existence of a tire defect; and (ii) whether the Plaintiffs have presented evidence suggesting that any alleged defect was a proximate cause of tire disablement and therefore, the Plaintiffs' alleged injuries. Because the Court finds that the Plaintiffs have not presented evidence sufficient to establish a genuine issue of material fact regarding the existence of a tire defect, the Court will grant the motion and enter summary judgment on behalf of the Defendant Bridgestone/Firestone North American Tire, LLC ("Firestone"). Because of the Court's disposition on this issue, the Court will not rule on whether the Plaintiffs have presented adequate causation evidence.

## FACTUAL BACKGROUND

This case is a products liability action arising out of a motor vehicle accident that occurred on April 7, 2002 in Milan, Cibola County, New Mexico. See Notice of Removal, Exhibit A, Complaint for Defective Product Resulting in Personal Injury ¶¶ 4-6, at 1-2, filed June 3, 2005 (Doc. 1)("Complaint"). The Plaintiffs allege that Samuel Armeanu was driving a semi-tractor trailer eastbound on I-40 when his Volvo D3's left front tire, a Bridgestone V-Steel Rib R227 285/75R 24.5, experienced a tread/belt separation and detachment, causing Armeanu to lose control of the vehicle. See id. ¶ 6, at 2. The Plaintiffs allege that the tire suffered a 360 degree belt separation. See Plaintiffs' Response to Defendant Bridgestone/Firestone North American Tire, LLC's Motion for Summary Judgment at 3, filed May 8, 2006 (Doc. 43).

Firestone contends that it had two experts examine the tire. See Summary Judgment Motion ¶ 3, at 3. Both experts have opined that there is no evidence of any defect in the tire, that there was evidence of overdeflected operation of the tire, and that there was an unrepaired puncture in the tire. See id.; Defendant Bridgestone/Firestone North American Tire, LLC's Motion and Memorandum for Summary Judgment, Exhibit 1, Expert Report of Joseph Grant at 6-8; Exhibit 2, Expert Report of Brian Quersion at 10-11, filed April 17, 2006 (Doc. 39).

## PROCEDURAL BACKGROUND

Firestone contends that the Plaintiffs have improperly sued Bridgestone Firestone North American Tire, LLC as "Bridgestone/Firestone North American Tire, LLC a/k/a Bridgestone Firestone, Inc. f/k/a Bridgestone Americas Holding, Inc." See Answer to Complaint ¶ 2, at 1, filed June 16, 2005 (Doc. 6). The Plaintiffs have not responded to this charge, so the Court assumes that Firestone is accurate in its knowledge of its corporate structure.

On April 26, 2005, the Plaintiffs filed a state products liability claim against Firestone in the Thirteenth New Mexico Judicial District. See Armeanu v. Bridgestone/Firestone North American Tire L.L.C., No. D1333-CV-05-110 (Thirteenth N.M. Jud. Dist. 2005). Firestone filed its Notice of Removal to this Court on June 3, 2005. On April 17, 2006, Firestone concurrently filed its Summary Judgment Motion and a motion requesting the Court exclude the testimony of the Plaintiffs' proffered tire expert, Orris H. Johnson. See Defendant Bridgestone Firestone North American Tire, LLC's Motion to Exclude Expert Testimony of Orris Johnson and Brief in Support Thereof, filed April 17, 2006 (Doc. 39)("Daubert Motion"). The Court has previously ruled on Firestone's Daubert Motion. See Memorandum Opinion, filed September 26, 2006 (Doc. 57). The Court will permit Johnson to testify about the history of tire development and design, the many causes of tire failure, and some of the tests that can be used to determine tire failure. The Court will not qualify Johnson as an expert in tire failure analysis, however, and will therefore not allow him to testify that the tire failure at issue was the result of a manufacturing defect.

In its Summary Judgment Motion, Firestone requests dismissal of Plaintiffs' strict liability, negligence, breach of warranty and punitive damages claims. See Summary Judgment Motion at 1-2. In their response, the Plaintiffs note that they do not oppose the entry of summary judgment "as to the negligence, warning and punitive damages claims originally asserted," but do oppose Firestone's motion with regard to their strict liability cause of action. The Court will construe this response to concede dismissal of all the Plaintiffs' claims except for their strict liability cause of action.

## SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories,

-3-

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(citing Fed. R. Civ. P. 56(e)). An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable, such that a jury could reasonably return a verdict for the non-moving party. Id. at 249-50 (citations omitted).

Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment. See Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988). The Court may only consider admissible evidence when ruling on a motion for summary judgment. See World of Sleep, Inc. v. La-Z-Boy Chair, Co., 756 F.2d 1467, 1474 (10th Cir. 1985)(citing Fed. R. Civ. P. 56(e)).

If a defendant seeks summary judgment, it has an "initial burden to show that there is an absence of evidence to support the nonmoving party's case." Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1164 (10th Cir. 2000)(quoting Thomas v. IBM, 48 F.3d 478, 484 (10th Cir. 1995))(internal quotations omitted). Upon meeting that burden, the plaintiff must then "identify specific facts that show the existence of a genuine issue of material fact." Id. (citations and internal quotations omitted). Accordingly, the plaintiff "must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." Id. (citations and internal quotations omitted).

The non-moving party must "go beyond the pleadings and by her own affidavits, or by the

depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. at 324 (internal quotations omitted). This obligation requires the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." Biester v. Midwest Health Servs., Inc., 77 F.3d 1264, 1266 (10th Cir. 1996)(citation and internal quotation marks omitted). Similarly, the non-moving party must demonstrate that something more than a "mere scintilla of evidence" supports its position. Hom v. Squire, 81 F.3d 969, 973 (10th Cir. 1996)(citations omitted).

## NEW MEXICO LAW REGARDING STRICT LIABILITY

In Stang v. Hertz Corp., 83 N.M. 730, 497 P.2d 732 (1972), the Supreme Court of New Mexico formally adopted the principle of strict liability in cases involving product manufacturers. See id. at 735, 497 P.2d at 737. The court in Stang v. Hertz Corp. explained that "the doctrine of strict liability was evolved to place liability on the party primarily responsible for the injury occurring, that is, the manufacturer of the defective product." Id. at 734, 497 P.2d at 736 (quoting Lechuga, Inc. v. Montgomery, 467 P.2d 256, 261 (Ariz. Ct. App. 1970)(Jacobson, J., concurring)). In holding manufacturers strictly liable for injuries that defective products cause, New Mexico law is consistent with that of virtually every other American jurisdiction. See Brooks v. Beech Aircraft Corp., 120 N.M. 372, 375, 902 P.2d 54, 57 (1995)(noting "nearly every American jurisdiction has adopted some form of strict liability in tort as a measure of manufacturer responsibility for injuries caused by defective products").

To succeed in a cause of action brought under a theory of strict products liability, a plaintiff must satisfy five elements:

(1) the product was defective; (2) the product was defective when it left the hands of

>the defendant and was substantially unchanged when it reached the user or consumer; (3) that because of the defect the product was unreasonably dangerous to the user or consumer; (4) the consumer was injured or was damaged; (5) the defective condition of the product was the proximate cause of the injury or damage.

Tenney v. Seven-Up Co., 92 N.M. 158, 159, 584 P.2d 205, 206 (Ct. App. 1978). See Trujillo v. Berry, 106 N.M. 86, 89, 738 P.2d 1331, 1334 (Ct. App. 1987)("The existence of a defective product is an element of proof in plaintiff's strict products liability claim."). The trier of fact in a products liability case does not consider the reasonableness of the manufacturer's conduct; rather, the fundamental question is "whether the product was defective, even though the supplier could not have known of such risks at the time of supplying the product." N.M. Code R. 13-1407.

## ANALYSIS

For the Plaintiffs to survive this motion for summary judgment, they must present evidence sufficient to establish a genuine issue of fact with regard to each element of a strict products liability cause of action. The Plaintiffs must go beyond the pleadings, and by their depositions, affidavits, and other evidence, designate specific facts that demonstrate a need for trial in this case. Specifically, the Plaintiffs must present evidence that the tire at issue was defective. In support of their assertions, the Plaintiffs have offered the Expert Report of Johnson and Johnson's subsequently filed affidavit outlining his examination methodology. Because the Court has previously determined that Johnson is not qualified to offer an expert opinion that the tire in question was defective in this case, the Court will grant Firestone's request for summary judgment and dismiss the Plaintiffs' strict liability cause of action.

## I. THE PLAINTIFFS HAVE NOT PRESENTED ADEQUATE EVIDENCE THAT THE TIRE AT ISSUE IS DEFECTIVE.

The Plaintiffs have designated Johnson as an expert witness to be called at the trial for the purpose of offering his opinion regarding alleged defects in the subject tire. Johnson has stated that "[t]he physical evidence and the history [of the tire] both reveal that the tire was properly maintained and operated and was not damaged by a foreign object." Affidavit of Orris H. Johnson ¶ 16, at 3 (given May 8, 2006)("Johnson Affidavit"). Consequently, Johnson concludes that "the only credible cause of 360 belt edge separation, as a matter of professional tire engineering development and failure analysis, is inadequate adhesion." Id.

The conclusions Johnson reaches in his affidavit are not adequately supported by his Expert Report, which lacks foundation for his ultimate opinions, and are, in part, contradictory to more specific statements made in his earlier deposition. See Deposition of Orris H. Johnson (taken February 22, 2006)("Johnson Deposition"). In his affidavit, Johnson represents that he is an expert in tire failure analysis, that he did identify a specific manufacturing defect in the subject tire, and that he did employ the scientific method in conducting his analysis. See Johnson Affidavit ¶¶ 3, 11, 16, at 1-3. Although the Court has carefully reviewed all of the evidence that the Plaintiffs presented, and has attempted, whenever possible, to harmonize Johnson's deposition and affidavit testimony, to the extent that Johnson's affidavit is an attempt to repair earlier flawed deposition testimony, the Court will disregard the affidavit statements. See Boomsma v. Star Transport, Inc., 202 F. Supp. 2d 869, 876-77 (E.D. Wis. 2002)(striking subsequently given affidavits when "[i]t is obvious that the plaintiffs are attempting to 'repair' their experts' deposition testimony by coming forward with affidavits more in line with their . . . arguments").

Johnson stated at his deposition that he did not base his opinions in this case upon any scientific studies he personally has performed or upon any scientific studies that others performed. See Johnson Deposition at 213:23 - 214:4. Johnson admits his opinions in this case are not based on any testing he has personally done. See id. at 213:17-19. He also testified at his deposition that his methodology consisted of only observation and experience. See id. at 218:12-19.

When Johnson inspected the tire, he did not inspect it in a laboratory; rather, he inspected it in the office of the Plaintiffs' counsel. See id. at 115:13-18. He did not use any tire tools or equipment while inspecting the tire other than his hands, an inspection sheet form, a camera, and a hardness gauge. See id. at 118:13-19.

Further, at the time of his deposition, Johnson lacked some information about the tire. He did not have any knowledge or information about the vehicle's maintenance history or the tire's service history. See id. at 121:13-19. Johnson has no knowledge or information regarding the condition of the vehicle's companion tires at the time of the accident. See id. at 121:20-23. He does not know how frequently the subject tire's inflation pressure was checked before the accident nor when the inflation pressure in the tire was last checked before the accident. See id. at 122:3-9.

Johnson has no knowledge or information regarding what air pressure the vehicle's owner and operator attempted to maintain in the tire and companion tires. See id. at 123:19-23. He does not know when the tire was put on the truck nor how many miles the tire was driven. See id. at 124:3-8.

In addition, Johnson did not review the tire's design specification. See id. at 109:15-17. He has not reviewed any adjustment data or claims data applicable to the tire. See id. at 109:18-20 & 110:6-8. Nor has he reviewed any Firestone documents in this case. See id. at 109:21-23.

Johnson has not inspected a Bridgestone V-Steel Rib R227 tire before this case, and is not aware of any other Bridgestone V-Steel Rib R227 tire this size sustaining a tread/belt separation and detachment resulting in an accident. See id. at 109:24 - 110:5. He has not done any testing with a Bridgestone V-Steel Rib R227 tire. See id. at 110:9-11.

Moreover, Johnson did not inspect the wheel. See id. at 131:20-21. He has not seen photographs or videotapes of the wheel. See id. at 209:19-21. He does not know the wheel's condition. See id. at 209:16-18. Johnson is not aware of anyone having inspected the wheel, and is not aware of anyone checking the valve stem on the wheel to see if it was damaged or leaking – conditions he admits can cause a tread/belt separation and detachment. See id. at 102:22-25 & 132:4-10. He did not inspect any of the companion tires and wheels on the vehicle. See id. at 104:21-23.

Johnson agrees that, to properly and accurately determine the cause of tire failure, a careful, thorough examination of the tire is necessary. See id. at 120:19-22. He agrees that, if a tire examiner misses important evidence, he can arrive at wrong conclusions. See id. at 121:9-12. Johnson has not determined, based upon his work in this case, what caused the adhesion breakdown of the subject tire. See id. at 161:13-16.

Johnson testified at his deposition that he wanted to examine the tire a second time to make sure the inner liner "does not show excessive heat." Id. 141:1-3. Johnson testified at his deposition that, when a tire is operated overdeflected/underinflated, overloaded, or both, excessive heat builds up in the tire, which may result in discoloration of the inner liner. See id. at 82:21 - 83:1, 85:19 - 86:14, 88:16 - 89:24, 93:1-3. Johnson concedes, however, that depending upon the use history of a particular tire, an expert may see different physical factors indicating the overdeflected operation

of the tire. See id. at 92:21-25. For example, depending on the use of the particular tire, heat discoloration may not be evident in the tire's inner liner. See id. at 93:7-10. At his deposition, Johnson testified that he did not see excessive evidence of uneven tread wear on the tire. See id. at 194:9-11.

Because neither Johnson's expert report, nor his deposition testimony, identify a specific defect in the tire at issue or point the Court to evidence of a potential pre-existing defect, both suggest that the tire in question may be presumed defective simply because an accident occurred. Johnson's subsequently filed affidavit is not inconsistent with this conclusion. Indeed, Johnson concludes that "the specific reason for the lack of adhesion which led to this 360 belt separation is not of any importance from a tire manufacturing standpoint." Johnson Affidavit ¶ 17, at 3. The law, however, requires more. Firestone has cited numerous cases involving lawsuits against tire manufacturers, which the Court finds instructive, indicating that in a products liability action, a plaintiff may not limit its proof to a bare assertion that an accident occurred. See Woelfel v. Murphy Ford Co., 487 A.2d 23, 24 (Pa. Super. Ct. 1985)(affirming summary judgment for defendant when plaintiffs presented no evidence of a defect other than the mere happening of an accident); Sears, Roebuck & Co. v. Haven Hills Farm, Inc., 395 So.2d 991, 995 (Ala. 1981)(holding that evidence of an injury alone does not prove the presence of a defect).

For the above stated reasons, and for reasons consistent with those more fully explained in the Court's memorandum opinion on Firestone's Daubert Motion, Johnson's testimony does not meet the standards for evidentiary reliability and helpfulness to the trier of fact that the Supreme Court articulated in Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Although the Court has determined that Johnson may testify about the history of tire development and design,

the many causes of tire failure, and some of the tests that can be used to determine tire failure, he will not be permitted to testify that the tire failure at issue was the result of a manufacturing defect.

In the absence of Johnson's expert testimony about a manufacturing defect, the Plaintiffs have not presented any other evidence of a manufacturing defect demonstrating a need for trial in this case. At the hearing on this motion, Plaintiffs' counsel acknowledged that, if the Court excluded Johnson's testimony, the entry of summary judgment in favor of Firestone would be appropriate. See Transcript of Hearing at 89:19-24 (taken May 24, 2006)('Transcript").[1]

In their products liability cause of action, proof that the tire at issue was defective is a required element of the Plaintiffs' case. The Plaintiffs have presented no evidence on this point other than the expert opinion of Johnson. Johnson's proffered testimony is of no help to the Plaintiffs, however, because in considering a motion for summary judgment, the Court may only consider admissible evidence. See World of Sleep, Inc. v. La-Z-Boy Chair, Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

## II.  THE COURT WILL NOT CONSIDER THE ADEQUACY OF THE PLAINTIFFS' CAUSATION EVIDENCE.

In its brief in support of its Summary Judgment Motion, and at the hearing on this motion, Firestone argued that the Plaintiffs have not presented any evidence, beyond mere allegations, that the alleged tire defect proximately caused the accident in which the Plaintiffs were injured. See Summary Judgment Motion at 2; Transcript at 92:11 - 94:15. Proximate cause is a required element in a strict liability cause of action. See Tenney v. Seven-Up Co., 92 N.M. at 159, 584 P.2d at 206. Firestone represents that Johnson has not offered any opinion regarding accident causation and that

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

the Plaintiffs have not presented any other fact or expert evidence addressing the issue. See Transcript at 94:3-9.

At the hearing on this issue, however, the Court indicated that if it excluded Johnson's testimony, it would not have to reach the merits of the causation issue. See Transcript at 94:17-20. The Plaintiffs' counsel agreed with this conclusion. See Transcript at 89:19-24. The Court need not decide whether the Plaintiffs have presented evidence adequate to establish a genuine issue of material fact with regard to proximate causation. Summary Judgment is appropriate because the Plaintiffs did not present evidence of a manufacturing defect.

**IT IS ORDERED** that Defendant Bridgestone/Firestone North American Tire, LLC's Motion and Memorandum for Summary Judgment is granted. The Plaintiffs' Complaint for Defective Product Resulting in Personal Injury is dismissed.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

James P. Lyle
Law Office of James P. Lyle, P.C.
Albuquerque, New Mexico

    *Attorney for the Plaintiffs*

Scott G. Edwards
Hartline, Dacus, Barger, Dreyer & Kern, L.L.P.
Dallas, Texas

– and –

Arthur O. Beach
Keleher & McLeod, P.A.
Albuquerque, New Mexico

    *Attorneys for Defendant*